UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
Adversary Proceeding #: 22-00050-5-DMW

| EVER-SEAL, INC. | ) | |
|---|---|---|
| | ) | |
| Plaintiff, Counterclaim Defendant | ) | MEMORANDUM IN SUPPORT OF |
| v. | ) | |
| | ) | DEFENDANT'S |
| STEPHEN BRADLEY HALFERTY | ) | FIRST |
| | ) | MOTION TO COMPEL |
| Defendant, Counterclaim Plaintiff | ) | |
| | ) | |

Defendant, by and through counsel, submits the following memorandum in support of its First Motion to Compel Discovery from Plaintiff Ever-Seal.

## OVERVIEW

This motion is the embodiment of litigation drudgery, the result of the inexplicable obstinance of a business litigant to provide discovery documents via email in the year 2023.

## BACKGROUND

On 9/25/2023, Halferty served Rule 34 Document Requests that simply requested the "bates labeled documents" be provided "via email." Ever-Seal responded, indicating its position that it will not be providing any responsive records via email or mail. [Motion to Compel ¶ 3] One of Ever-Seal's responses illustrates this.

> 8. All invoices between Ever-Seal Inc. and "Absolute Chemical" which you contend are evidence of a purchase of any "proprietary" or "special" formulation only available for purchase by Ever-Seal, Inc.
>
> RESPONSE: Plaintiff objects to this Request as overly broad and unduly burdensome given that it is unmoored in time period. Plaintiff further objects to production of documents in the form and manner requested by Defendant. Without waiving its objections, Plaintiff will make a sample invoice available for inspection and copying at Ever-Seal's office located at 242 W. Main St., Suite 311, Hendersonville, TN 37075 by or on October 31, 2023.

1

Shortly after receiving the email indicating that responsive records would only be made available at 242 W. Main St. Suite 311, Hendersonville, TN, counsel emailed Ever-Seal's counsel.

> "I have several thoughts based on your client refusing to produce PDFs for discovery responses in the year 2023. Notably, many of the types of records sought are electronic in their native form and if not, they are easily converted to electronic form using technology that cost much less than the cost of a flight for two attorneys and lodging to Nashville. https://www.brother-usa.com/products/ads3100 ($329.99).
>
> We should meet and confer about this soon in light of the upcoming October 31, 2023 Hearing. I don't mind talking on the phone but since we would probably have to send one of those phone call summary emails, I'm thinking we just email for time sake." [Ex. A]

The next day, on October 26, 2023, Counsel for Ever-Seal provided the following reason for an in-person inspection. [Ex. A]

> "I saw your three emails. My understanding of the Rules is that it is proper to make documents available for inspection[.]"

A Rule 37 letter was then sent regarding the precise issue of the form of Ever-Seal's document production (e.g., in-person inspection/copying in TN vs. sending an email/mail to NC). [Ex. A] The letter expressed an opinion regarding whether an in-person "inspection and copying" event contemplated by Ever-Seal was the best use of time and other resources. [Ex. A]

**A. The location Ever-Seal wants Halferty's Counsel to travel to and make copies [Ex. B]**



242 W. Main St. Hendersonville, TN (Image Source - Google Street View)

Ever-Seal's "will make available for inspection and copying" discovery responses substantially state the following. *"Plaintiff will make [records] available for inspection and copying at Ever-Seal's office located at 242 W. Main St. Suite 311, Hendersonville, TN 37075 by or on October 31, 2023."* Based on Google Maps information included in Exhibit B, that address actually the physical address for a business called "Pony Mailbox and Business Center." It is over 500 miles from RDU Airport. [Ex. C] It is possible that Plaintiff Ever-Seal maintains a "Private Mailbox" in this building. [Ex. D] However, it appears Ever-Seal's current "headquarters" are located at 894 W Albert Gallatin Ave Gallatin, TN 37066. [Ex. E]

## LEGAL STANDARDS

The policy of "broad discovery" "facilitate[s] the truth-seeking function of our justice system." *See, e.g., Meyer v. Anderson*, No. 2:19-cv-00640-DCN, at *5 (D.S.C. Aug. 31, 2020) ("promoting broad discovery to facilitate the truth-seeking function of our justice system"). It is also well-settled that courts have broad powers to control discovery and may properly consider factors such as "burden," "costs," and "expense," as well as "the needs of the case, prior discovery in the case, the amount in controversy, and the importance of the issues at stake in the action." *See* FCRP 26. One of the comments to Rule 26 shows that disputes between litigants can arise related to "forms of production." FCRP 26 cmt. Subdivision (f). ("Early identification of disputes over the forms of production may help avoid the expense and delay of searches or productions using inappropriate forms.").

In deciding Motions to Compel or Motions for Protective Orders, at least one court has stated "embroiling trial judges in day-to-day supervision of discovery is a result directly contrary to the overall scheme of the federal discovery rules." *Cine Forty–Second St. Theatre Corp. v.*

*Allied Artists Pictures Corp*. 602 F.2d 1062, 1068 (2d Cir. 1979) (internal citations and alterations omitted).

## ARGUMENT

I. **"IN-PERSON" "INSPECTION AND COPYING" OF DOCUMENTS IN TENNESSEE IS AN ECONOMICALLY WASTEFUL AND BURDENSOME DISCOVERY DEVICE**

Generally, Defendant does not dispute that physical in-person inspections of documents, tangible things, and other potentially relevant evidence could be the most "reasonably useable" form or discovery device to satisfy a Rule 34 request. Indeed, Defendant Halferty has previously requested an inspection of Ever-Seal's purportedly "proprietary work truck" which has not occurred yet.[1] However, simply because "in-person" "inspection and copying" of documents may be permissible, the court is not required to conclude that in-person inspection is *per se* reasonable (or "proper") in all circumstances.

Ever-Seal's responses to Requests for Production Numbers 8 and 22 demonstrate the absence of utility and reason underlying its current "in-person" "inspection and copying" stance. Request for Production number 8 (cited above) requests invoices. Ever-Seal responded that a single "sample invoice" would be made available for "inspection" over 500 miles away. None of Ever-Seal's responses to the requests for production identify any particular burden or cost that justifies the decision to not do the reasonable thing, which is to send this invoice as an email attachment or mail it.[2]

Request for Production number 22 is another simple request that seeks emails between Ever-Seal and Mr. Halferty before he was fired by Steve Nelson in 2021. Ever-Seal objected to

---

[1] Ever-Seal objected to an in-person inspection of the truck on the grounds that it was "vague and overbroad." Ever-Seal also stated that it will only provide "pictures" of the truck, further stating that an in-person inspection would be permitted "if further inspection is deemed necessary after review of the pictures." [Ex F]
[2] Presumably, the invoice would be printed on an 8.5 x 11inch piece of paper.

4

the "form" of production requested for these emails. It is unclear why Ever-Seal is objecting to the production of <u>e</u>mails in <u>e</u>lectronic "form."

It is 2023 and the information sought by Halferty's Rule 34 requests presumably includes mostly emails and business records. Ever-Seal's complaint also professes technological competence and asserts its status as a "distributor" for the entire southeastern United States.[3] In light of these circumstances, the court may conclude that the "inspection and copying" session contemplated by Ever-Seal's discovery responses at the Pony Mailbox Center in is an unreasonable and economically wasteful form of production.

II. **EVER-SEAL INC. SHOULD BE REQUIRED TO PRODUCED RESPONSIVE DOCUMENTS VIA EMAIL, MAIL, OR DESIGNATED DELIVERY SERVICE**

If Ever-Seal actually intends to produce the responsive records at the Pony Mailbox Center in Hendersonville TN on or before October 31, 2023, an examination of the facilities present at this location further supports the relief requested. In addition to "Private Mailbox" services, Pony Mailbox and Business Center has trained staff who "know how" to use copiers, computers, and printers. They also can send packages with copies of records via Federal Express or UPS. [Ex G]

> Pony Mailbox and Business Center is an independently owned and operated packing, shipping, printing and business services center located in Hendersonville, TN. We are professionally trained experts and members of the Hendersonville community who are dedicated to providing Super-Star Customer care in a convenient, efficient and friendly environment. [Ex. G]

Assuming Ever-Seal is going to bring responsive records the Pony Mailbox Business Center on or before October 31, 2023 as promised, Defendant submits that the following course

---

[3] [DE # 1] (10…service areas in Alabama, Georgia, Indiana, North Carolina, South Carolina, Kentucky, Tennessee, and Virginia") (20. Seal-It is a penetrant that requires specialized processes) ("32… Ever-Seal's G-Suite application") ("37…. Ever-Seal's systems and data")

of action would be the most reasonable one. Instead of Defendant's attorney flying to Nashville (again) to get information to defend against Plaintiff's claims, a Pony Mailbox employees could assist Ever-Seal with making photocopies of the responsive records. Then those copies could be shipped directly to Halferty's counsel. Alternatively, the copies could be shipped to Ever-Seal's counsel, who could apply appropriate confidentiality designations or screen for privilege and then serve them.

## **CONCLUSION**

The rules may permit in-person "inspection and copying" as a discovery device or form of production. In some cases, this form may be the most reasonable and "proper" one. In the instant case however, it is not. 242 W. Main St. Suite 311, Hendersonville, TN 37075 is not even Ever-Seal's office. It is an "independently owned" "business services center" located over 500 miles away. Regardless, Ever-Seal's responses contain no statements explaining why scanning business records or forwarding emails and other ESI to its counsel creates the degree of "undue burden or expense" that justifies out-of-state overnight travel for an attorney. The discovery period was reopened in this case, but it was a brief window now almost closed. Ever-Seal should be ordered to provide all responsive records it intends to produce in this case requests via email or mail.

Respectfully submitted the 27th day of October 2023.

*/s/ Garrett L. Davis*
**Law Office of Garrett Davis, PLLC**
Garrett L. Davis
NC Bar # 52605
555 S. Mangum St. Ste. 100
Durham, NC 27701
gd@garrettdavislaw.com

**CERTIFICATE OF SERVICE**

      I certify that on October 27, 2023, I served a copy of this document on Plaintiff's Counsel of Record via the Court's ECF system.

*/s/ Garrett L. Davis*

Kip Nelson
Brian R. Anderson
Fox Rothschild LLP
230 N. Elm Street
Suite 1200
Greensboro, NC 27401
336-387-5205
knelson@foxrothschild.com
branderson@foxrothschild.com